Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiffs*
*Moonbug Entertainment Limited and*
*Treasure Studio Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO INC., <br><br> *Plaintiffs* <br><br> v. <br><br> 640350 STORE, 9999 KINDS TOY BOUTIQUE STORE, AISPMEE OFFICIAL STORE, ANIME CHARACTER MODEL SHOP STORE, ANIME TOY SERIES STORE, BABY'S TOY STORE, BACKDROPBYNITREE STORE, BAGPICKY STORE, BCAA STORE, BEETOY TOY STORE, BITE BITES OFFICIAL STORE, BLACK KNIGHT STORE, BLANKET 003 STORE, BOOM SPECIALTY STORE, BRILLIANT DECORATIVE FAVORS STORE, BRILLIANT FUN PARTY STORE, CAREHER GIFTS STORE, CHILDREN'S FUNNY STORE, CHILD'S CLOAKROOM STORE, CJS TOY STORE, CRUSH BACKDROPS STORE, DA KUAN PARTY STORE, DAFI R STORE, DAMAITONG STORE, DECCER STORE, DISNEY ANIME THEME STORE, DIY-MATERIAL STORE, DROPSHIP PLUSH TOY STORE, DUWES OFFICIAL STORE, FANYI TOY | **CIVIL ACTION No. 22-cv-5042 (AT)** |

STORE, FLAMUR HOMEDECOR OFFICIAL STORE, FUNNY TOY8 STORE, FUNNY TOY9 STORE, GOOD LUCKLY YOU STORE, HAPPYNESS WONDERLAND, HAPPYSMILESHEN STORE, HFEZ STORE, HOLIDAY PARTIES STORE, HTMODEL STORE, HYPI TOY STORE 12 STORE, INNITREE STORE, KLDS STORE, KO KO BOWS STORE, L PARTY STORE, LEBEL STORE, LET'S PARTY TOGETHER STORE, LITCHI BACKDROP STORE, LITTLE NAUGHTY CHILDREN'S SHOP STORE, LOVE PARTY STORE, LYB TOY STORE, MILULU88 STORE, MOMN STORE, MS PARTY STORE, -NAUGHTY BABY STORE, NEOBACK BACKDROP STORE, NO.3478 FESTIVE AND GIFT STORE, OLYFACTORY STORE, PARTY SUPPLIESG STORE, PDD PARTY SUPPLIES STORE, PHOTURT PROFESSIONAL BACKDROP STORE, PLAYPLAYPLAY STORE, POKEMOON PARTY STORE, PRETTY RIBBON&CRAFTS INC., ROBLOX STORE, SH CHILD CLOTHES STORE, SHOP3195061 STORE, SHOP4878036 STORE, SHOP5429117 STORE, SHOP5440075 STORE, SHOP834240 STORE, SHOP910455180 STORE, SHOP911035215 STORE, SHOP911389045 STORE, SHOP911545108 STORE, SHOP911553397 STORE, SMILEWILL 01 STORE, SPRINGHIT STORE, SR TOY STORE, STARTING POINT TOY STORE, SUMAIDA004 STORE, SURPRISE PARTY STORE, THE TWO DIMENSIONAL ASSOCIATION TOY STORE, TOY FUNNY WORLD STORE, VODOF OFFICIAL STORE, WIN-WIN TOY STORE, YI XIAXIA STORE, YI YUE PARTY STORE, YISI PARTY BALLOONS DECORS STORE, YUENIOR TOYS STORE, YY TOY STORE, ZHAN BAO ER STORE, ZIROU STORE, ZQ HOUSE STORE, ZR PARTY BOUTIQUE STORE, ZY HOUSE STORE and ZYZYKK OFFICIAL STORE,

*Defendants*

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION AGAINST DEFAULTING DEFENDANTS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  PROCEDURAL HISTORY......................................................................................... 1

III.  STATEMENT OF FACTS ......................................................................................... 2

IV.  ARGUMENT ............................................................................................................. 3

   A.  THE ENTRY OF A DEFAULT JUDGMENT AGAINST DEFAULTING
   DEFENDANTS IS APPROPRIATE ................................................................................ 3

   B.  DEFAULTING DEFENDANTS ACTED WILLFULLY ................................................ 5

   C.  PLAINTIFFS HAVE ESTABLISHED DEFAULTING DEFENDANTS' LIABILITY... 7

     1.  Defaulting Defendants are Liable for Trademark Infringement and Counterfeiting ...... 7

     2.  Defaulting Defendants are Liable for Copyright Infringement ..................................... 9

   D.  PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION........................... 10

   E.  PLAINIFFS ARE ENTITLED TO HEIGHTENED STATUTORY DAMAGES ........... 14

   F.  PLAINTIFFS ARE ENTITLED TO SERVE RESTRAINING NOTICES PURSUANT
   TO CPLR § 5222 AND TO AN ASSET TURNOVER PURSUANT TO CPLR § 5225 ........ 20

V.  CONCLUSION............................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Allee v. Medrano*, 416 U.S. 802 (1974) .................................................................................. 11

*All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613 (S.D.N.Y. 2011) .............. 19

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist. LEXIS 125068, (S.D.N.Y. Aug. 8, 2017) ................................................................ 21, 23

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) ........................................................ 7

*AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150 (S.D.N.Y. Aug. 2, 2016) ................................................................................................................ 16

*Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849 (2d Cir. 1995) ............................................ 6

*Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449 (E.D.N.Y. July 5, 2007) ................................................................................................... 21

*Cisco Tech, Inc. v. Certification Trendz Ltd.*, No. 15-cv-965 (VLB), 2015 U.S. Dist. LEXIS 83127 (D. Conn. June 26, 2015) .............................................................................. 11

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) .......................... 3, 7

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, (E.D.N.Y. 2011) .......................... 9

*Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012) ........................ 8

*Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842 (S.D.N.Y. Sep. 2, 2011) ................................................................................................. 6

*Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005 (S.D.N.Y. June 7, 2014) .......................... 15

*Cruz v. TD Bank, N.A.*, 711 F.3d 261 (2d Cir. 2013) ................................................................... 22

*CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S. Dist. LEXIS 23014 (E.D.N.Y. Feb. 25, 2016) ....................................................................... 23

*Dawson v. Krolikowski*, 530 N.Y.S.2d 931 (Sup. Ct. 1988) ........................................................ 21

*Elsevier, Inc. v. Does 1-10*, No. 14-cv-2422 (GHW), (S.D.N.Y. Apr. 13, 2015) ........................ 20

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ............................................................ 3

*Faram 1957 S.p.A. v. Faram Holding & Furniture, Inc.,* No. 16-CV-2430 (VSB), 2018 U.S. Dist. LEXIS 44594 (S.D.N.Y. Mar. 19, 2018) ................................................................ 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361(1991) ............................................ 9

*Finkel v. Romanowicz*, 577 F.3d 79 (2d Cir. 2009) ........................................................................ 7

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986) ........................ 16

*Gray v. Sanders*, 372 U.S. 368 (1963) ......................................................................................... 12

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992) .............. 10

*Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831 (S.D.N.Y. Jan. 20, 2010) .................................................................................... 20

*Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228 (3d Cir. 2003) ........................................................ 7

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (S.D.N.Y. 2004) ..................... 6

*Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117 (S.D.N.Y. 2008) ..................................... 8

*Harris v. Fairweather*, 2012 U.S. Dist. LEXIS 128409 (S.D.N.Y. Sept. 10, 2012) ................... 10

*Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011) ... 14

*Ideavillage Prods. Corp. v. 711 Market, et al.,* No. 18-cv-7832-JMF (S.D.N.Y. Dec. 12, 2018) ......................................................................................................................... 20, 23

*Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920 (S.D.N.Y. Mar. 13, 1995) ................................................................................................ 22

*Jemine v. Dennis*, 901 F. Supp. 2d 365 (E.D.N.Y. 2012) ............................................................... 7

*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) ...................................................... 18

*Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009) ............................................................. 23

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (S.D.N.Y. 2002) ............... 19

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501 (S.D.N.Y. 2009) .............................................................................................................................. 16, 17

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Dec. 17, 2018) ......................... 20, 23

*McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488,  (S.D.N.Y. 2018) ...... 11

Michael Grecco Prods., Inc. v. Valuewalk, LLC, 345 F. Supp. 3d 482, 502 (S.D.N.Y. 2018) ...... 6

*Microsoft Corp. v. Goldah Com Network Tech Co.*, 17-cv-02896-LHK, 2017 U.S. Dist. LEXIS 168537 (N.D. Cal. Oct. 11, 2017) ............................................................................................. 5

*Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011) ....................... 13

*Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120 (E.D.N.Y. 2010) ................................ 23

*Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010) .............. 13, 14

*Moose Toys Pty Ltd., et al. v. 963, et al.,* No. 18-cv-2187-VEC (S.D.N.Y. Nov. 30, 2018) ........ 23

*N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250 (2d Cir. 1992) ............................................. 6

*Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, No. 15CV5553-LTS, 2016 U.S. Dist. LEXIS 71942 (S.D.N.Y. June 2, 2016) ............................................................................. 3

*Nike, Inc. v. Top Brand Co.*, 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543 (S.D.N.Y. Feb. 27, 2006) ....................................................................................................... 18

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) ............................................................... 20

*Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579 (S.D.N.Y. 2012) ............................ 23

*NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..... 14

*Off-White LLC v. 2017pingan, et al.*, 20-cv-5191 (KPF) Dkt. 40 (S.D.N.Y. May 7, 2021) ........ 21

*Off-White LLC v. 5HK5584*, No. 19-cv-672 (RA) (JLC), 2020 U.S. Dist. LEXIS 58926 (S.D.N.Y. Apr. 3, 2020) ........................................................................................................... 8

*Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG (S.D.N.Y. Jan. 17, 2019) ...................................................................................................................................... 23

*Ontel Prods. Corp. v. Airbrushpainting Makeup Store*, 17-cv-871 (KBF), 2017 Dist. LEXIS 221489 (S.D.N.Y. June 29, 2017) ......................................................................................... 19

O*ntel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.*, No. 17-cv-871-KBF, Dkt. 40 (S.D.N.Y. Feb. 6, 2017) ......................................................... 18

*Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77 (2d Cir. 1996) ..................................................... 22

*Pearson Educ., Inc. v. Vegara,* No. 09 Civ. 6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010) ...................................................................................................... 13

*Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S. Dist. LEXIS 82201 (S.D.N.Y. Nov. 7, 2007) ....................................................................... 19

*Really Good Stuff, LLC v. BAP Inv'rs, L.C.,* 813 Fed. App'x 39 (2d Cir. 2020) ......................... 12

*Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054 (S.D.N.Y. Apr. 26, 2005) ....................................................................................................................... 19

*Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054 (S.D.N.Y. June 5, 2002) .............................................................................................. 19

*S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063 (S.D.N.Y. Oct. 6, 2010) ......................................................................................................... 23

*Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413 (S.D.N.Y. 2018) ........................... 20

*Steele v. Bell,* 2014 U.S. Dist. LEXIS 44976 (S.D.N.Y. Mar. 3, 2014) ...................................... 11

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ............................................................... 5
*Tapestry, Inc., et al. v. baoqingtianff, et al.,* No. 18-cv-7650-PAE (S.D.N.Y. Jan. 8, 2019) . 20, 23
*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ..................................................... 7
*Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y, 2003) .......................................... 5
*Tiffany (NJ) LLC v. Dong*, 2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013).................. 21
*Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647 (S.D.N.Y. Sep. 22, 2015) ............................................................................................................... 20
*Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971) .......................................... 10
*True Religion Apparel, Inc. v. Xiaokang Lei, et al.*, slip op. at 11, No. 17-cv-5553 (LGS) (GWG) (S.D.N.Y. Mar. 12, 2012) ................................................................................... 19, 20
*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993)............................ 6
*United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) ..... 12
*Vans, Inc., et al. v. Walmart, Inc., et al.*, 21-cv-01876 (KES) Dkt. 65 (C.D. Cal. Mar. 31, 2022) ............................................................................................................................... 12
*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ................................... 12
*Wow Virtual Reality, Inc. v. BIENBEST, et al.,* No. 18-cv-3305-VEC (S.D.N.Y. Dec. 5, 2018) 23

**Statutes**

15 U.S.C. § 1116............................................................................................................... 10
15 U.S.C. § 1117............................................................................................................... 15
17 U.S.C. § 502................................................................................................................. 10
17 U.S.C. § 504(a) ............................................................................................................ 15
17 U.S.C. § 504(c) ............................................................................................................ 14
28 U.S.C. § 1961............................................................................................................... 17
Fed. R. Civ. P. 55................................................................................................................ 3
Fed. R. Civ. P. 69.............................................................................................................. 21
Fed. R. Evid. 1006 ............................................................................................................ 18
N.Y. C.P.L.R. § 5201......................................................................................................... 23
N.Y. C.P.L.R. § 5222..................................................................................................... 21, 22
N.Y. C.P.L.R. § 5225..................................................................................................... 21, 22
N.Y. C.P.L.R. §§ 5201-5253 .............................................................................................. 22

**GLOSSARY**

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiffs** | Moonbug Entertainment Limited ("Moonbug") and Treasure Studio Inc. ("Treasure") | N/A |
| **Defendants** | 640350 Store, 9999 Kinds Toy Boutique Store, Aispmee Official Store, Anime character model shop Store, Anime toy series Store, Baby's Toy Store, BackdropByNitree Store, bagpicky Store, BCAA Store, BEETOY Toy Store, bite bites Official Store, Black Knight Store, Blanket 003 Store, Boom Specialty Store, Brilliant Decorative Favors Store, Brilliant Fun Party Store, Careher Gifts Store, Children's Funny Store, Child's cloakroom Store, CJS Toy Store, CRUSH backdrops Store, Da Kuan Party Store, DAFI R Store, DAMAITONG Store, DECCER Store, Disney Anime Theme Store, DiY-Material Store, Dropship Plush Toy Store, DUWES Official Store, FanYi Toy Store, Flamur HomeDecor Official Store, Funny Toy8 Store, Funny Toy9 Store, good luckly you Store, Happyness Wonderland, happysmileshen Store, HFEZ Store, Holiday parties Store, HTMODEL Store, Hypi Toy Store 12 Store, INNITREE Store, KLDS Store, Ko Ko Bows Store, L party Store, Lebel Store, Let's party together Store, LITCHI backdrop Store, Little naughty children's shop Store, Love Party Store, LYB Toy Store, MILULU88 Store, MOMN Store, MS party Store, -Naughty baby Store, NeoBack Backdrop Store, No.3478 Festive And Gift Store, Olyfactory Store, Party suppliesG Store, PDD Party supplies Store, Photurt Professional Backdrop Store, PlayPlayPlay Store, Pokemoon Party Store, Pretty Ribbon&Crafts Inc., Roblox Store, SH Child Clothes Store, Shop3195061 Store, Shop4878036 Store, Shop5429117 Store, Shop5440075 Store, Shop834240 Store, Shop910455180 Store, Shop911035215 Store, Shop911389045 Store, Shop911545108 Store, Shop911553397 Store, smilewill 01 Store, SpringHit Store, SR Toy Store, starting point toy Store, sumaida004 Store, Surprise Party Store, The Two Dimensional Association toy Store, Toy Funny World Store, VODOF Official Store, Win-Win Toy Store, Yi Xiaxia Store, Yi Yue party Store, YISI Party Balloons Decors Store, Yuenior Toys Store, YY Toy Store, | N/A |

| | | |
|---|---|---|
| | ZHAN BAO ER Store, Zirou Store, ZQ House Store, ZR Party Boutique Store, ZY House Store and ZYZYKK Official Store | |
| **Defaulting Defendants** | 640350 Store, 9999 Kinds Toy Boutique Store, Aispmee Official Store, Anime character model shop Store, Anime toy series Store, Baby's Toy Store, BackdropByNitree Store, bagpicky Store, BCAA Store, BEETOY Toy Store, bite bites Official Store, Black Knight Store, Blanket 003 Store, Boom Specialty Store, Brilliant Decorative Favors Store, Brilliant Fun Party Store, Careher Gifts Store, Children's Funny Store, Child's cloakroom Store, CJS Toy Store, CRUSH backdrops Store, Da Kuan Party Store, DAFI R Store, DAMAITONG Store, DECCER Store, Disney Anime Theme Store, DiY-Material Store, Dropship Plush Toy Store, DUWES Official Store, FanYi Toy Store, Flamur HomeDecor Official Store, Funny Toy8 Store, Funny Toy9 Store, good luckly you Store, Happyness Wonderland, happysmileshen Store, HFEZ Store, Holiday parties Store, HTMODEL Store, Hypi Toy Store 12 Store, INNITREE Store, KLDS Store, Ko Ko Bows Store, L party Store, Lebel Store, Let's party together Store, LITCHI backdrop Store, Little naughty children's shop Store, LYB Toy Store, MILULU88 Store, MOMN Store, MS party Store, -Naughty baby Store, NeoBack Backdrop Store, No.3478 Festive And Gift Store, Olyfactory Store, Party suppliesG Store, PDD Party supplies Store, Photurt Professional Backdrop Store, PlayPlayPlay Store, Pokemoon Party Store, Pretty Ribbon&Crafts Inc., Roblox Store, SH Child Clothes Store, Shop3195061 Store, Shop4878036 Store, Shop5429117 Store, Shop5440075 Store, Shop834240 Store, Shop910455180 Store, Shop911035215 Store, Shop911389045 Store, Shop911545108 Store, Shop911553397 Store, smilewill 01 Store, SpringHit Store, SR Toy Store, starting point toy Store, sumaida004 Store, Surprise Party Store, The Two Dimensional Association toy Store, Toy Funny World Store, VODOF Official Store, Win-Win Toy Store, Yi Xiaxia Store, Yi Yue party Store, YISI Party Balloons Decors Store, Yuenior Toys Store, YY Toy Store, ZHAN BAO ER Store, Zirou Store, ZQ House Store, ZR Party Boutique Store, ZY House Store and ZYZYKK Official Store | N/A |

| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York | N/A |
|---|---|---|
| **Sealing Order** | Order to Seal File entered on June 15, 2022 | Dkt. 1 |
| **Complaint** | Plaintiffs' Complaint filed on June 16, 2022 | Dkt. 9 |
| **Application** | Plaintiffs' e*x parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on June 16, 2022 | Dkts. 14-15 |
| **Miller Dec.** | Declaration of Robert Miller in Support of Plaintiffs' Application | N/A |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiffs' Application | Dkt. 15 |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery | Dkt. 16 |
| **User Account(s)** | Any and all websites and any and all accounts with online marketplace platforms such as AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |

| CoComelon Content | A popular streaming media show and YouTube channel featuring 3D animation videos of both traditional nursery rhymes and original children's songs | N/A |
|---|---|---|
| CoComelon Applications | U.S. Trademark Serial Application Nos.: 88/681,262 for "COCOMELON" for goods in Class 28; 88/681,248 for "COCOMELON" for goods in Class 9; 88/681,253 for "COCOMELON" for goods in Class 25; 88/945,840 for " " for goods in Class 3; 88/681,276 for " " for goods in Class 25; 88/681,270 for " " for goods in Class 9; and 88/681,280 for " " for goods in Class 28 | N/A |
| CoComelon Registrations | U.S. Trademark Registration Nos.: 6,375,368 for "COCOMELON" for goods in Class 16; 5,830,142 for "COCOMELON" for goods in Classes 9 and 41; 6,421,553 for "COCOMELON" for goods in Class 28; 6,521,784 for "COCOMELON" for goods in Class 25; | N/A |

5,918,526 for "" for goods in Classes 9

and 41; and 6,563,758 for "" for goods in Class 25

| | | |
|---|---|---|
| **CoComelon Marks** | The marks covered by the CoComelon Registrations and CoComelon Applications | N/A |
| **CoComelon Works** | U.S. Copyright Registration Nos.: VAu 1-379-978 covering JJ; VAu 1-322-038 covering Unpublished Family Characters 2017; VAu 1-319-613 covering Animal Characters 2017 and VAu 1-374-077 covering CoComelon Logo | N/A |
| **CoComelon Products** | A variety of consumer products including toys, apparel, backpacks and other gear | N/A |
| **Counterfeit Products** | Products bearing or used in connection with the CoComelon Marks and/or CoComelon Works, and/or products in packaging and/or containing labels and/or hang tags bearing the CoComelon Marks and/or CoComelon Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the CoComelon Marks and/or CoComelon Works and/or products that are identical or confusingly or substantially similar to the CoComelon Products | N/A |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) | N/A |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., | N/A |

| | | |
|---|---|---|
| | Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise | N/A |
| **Defendants' Frozen Accounts** | Defendants' Financial Accounts that were and/or are attached and frozen or restrained by the Financial Institutions pursuant to the TRO and/or PI Order, or which are attached and frozen or restrained pursuant to any future order entered by the Court in this action | N/A |
| **Plaintiffs' Motion for Default Judgment** | Plaintiffs' Motion for Default Judgment and a Permanent Injunction Against Defaulting Defendants filed on May 26, 2023 | TBD |
| **Nastasi Aff.** | Affidavit by Gabriela N. Nastasi in Support of Plaintiffs' Motion for Default Judgment | TBD |
| **Miller Aff.** | Affidavit by Robert Miller in Support of Plaintiffs' Motion for Default Judgment | TBD |

ix

## I.     INTRODUCTION[1]

In accordance with the Court's Individual Rules, Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2), Plaintiffs respectfully submit that entry of default judgment against Defaulting Defendants is appropriate and seek the following relief against Defaulting Defendants: 1) the entry of final judgment and permanent injunction by default; 2) individual statutory damages awards pursuant 15 U.S.C. § 1117(c) and/or 17 U.S.C. § 504(c) in the amount of Seventy Five Thousand U.S. Dollars ($75,000.00) against each of the ninety-five (95) Defaulting Defendants, plus post-judgment interest calculated pursuant to the statutory rate; and 3) service of asset restraining notices pursuant to CPLR § 5222.[2]

## II.     PROCEDURAL HISTORY

Plaintiffs filed the Application, including the Complaint, on June 16, 2022. (Nastasi Aff., ¶ 9). On June 16, 2022, the Court entered the TRO. *Id.* at ¶ 11.  The TRO specifically authorized service by electronic means.[3] *Id*. at ¶ 13.  On July 8, 2022, pursuant to the TRO, Plaintiffs served each and every Defaulting Defendant with the Summons, Complaint, TRO, all papers filed in support of Plaintiffs' Application. *Id*. at ¶ 15.  On May 25, 2023, Plaintiffs filed an application for a Clerk's Certificate of Default against Defaulting Defendants and on the same day, May 25, 2023

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

[2] Through this Motion for Default Judgment, in addition to permanent injunctive relief, Plaintiffs only seek damages for their First, Second and Fifth Causes of Action, however, do not waive their remaining causes of action. Plaintiffs do not seek monetary relief in connection with the remaining causes of action pled in the Complaint or attorneys' fees.

[3] The TRO specifically ordered that service shall be made on Defendants and deemed effective as to all Defendants if it was completed by the following means:  1) delivery of: (i) PDF copies of the TRO together with the Summons and Complaint, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiffs' Application seeking the TRO to Defendants' e-mail addresses to be determined after having been identified by AliExpress pursuant to Paragraph V(C) of the TRO; or 2) delivery of a message to Defendants through the system for communications established by the Third Party Service Providers on their respective platforms, notifying Defendants that an action has been filed against them in this Court and providing a link to a secure website (such as NutStore or a large mail link created through Rmail.com) where each Defendant will be able to download PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiffs' Application seeking the TRO.

1

the Clerk of the Court entered a Certificate of Default against Defaulting Defendants. *Id.* at ¶¶ 17-18, Ex. D. Accordingly, Plaintiffs respectfully submit the instant Motion for Default Judgment.

### III.   STATEMENT OF FACTS

Plaintiffs are global entertainment companies that create and distribute inspiring and engaging stories to expand the worlds and minds of children under their own popular brands, such as Blippi, Little Baby Bum, Arpo and The Sharksons, as well as in partnership with prominent children's entertainment brands including Mattel Inc., Nickelodeon, Procter & Gamble and LEGO. (Miller Dec., ¶ 3).  Plaintiffs are the owners of the intellectual property assets for the popular CoComelon Content – a popular streaming media show and YouTube channel featuring 3D animation videos of both traditional nursery rhymes and original children's songs. *Id.* at ¶ 4. In addition to streaming content, Plaintiffs have also developed a variety of consumer products such as toys, apparel, backpacks and other gear, which is sold through the official CoComelon store at https://shop.moonbug.com/collections/cocomelon. *Id.* at ¶ 7.

Plaintiffs have gained significant common law trademark and other rights in their CoComelon Products through their use, advertising and promotion, and have also protected their valuable rights by filing for and/or obtaining federal trademark registrations.  *Id.* at ¶ 9. Plaintiffs are the owners of the CoComelon Marks. *Id.* at ¶ 10. In addition, Plaintiff Treasure also owns copyrights related to the CoComelon Products and is the owner of the CoComelon Works.  *Id.* at ¶ 12-13.

Defendants are located in China but conduct business in the U.S., including within this judicial district, and other countries through their User Accounts and Merchant Storefronts with and on AliExpress.  (Complaint, Ex. D).  Plaintiffs retained Epstein Drangel to investigate and research manufacturers, wholesalers and/or third-party merchants offering for sale and/or selling Counterfeit Products on AliExpress.  (Miller Dec., ¶ 20; Nastasi Dec., ¶ 16, Ex. A).  Through their

2

Merchant Storefronts, without Plaintiffs' authorization or consent, Defendants were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products. (Miller Dec., ¶¶ 21-23; Nastasi Dec., ¶ 16, Ex. A).

## IV.   ARGUMENT

### A.  THE ENTRY OF A DEFAULT JUDGMENT AGAINST DEFAULTING DEFENDANTS IS APPROPRIATE

Federal Rule of Civil Procedure 55(b) provides for a court-ordered default judgment following the entry of default by the court clerk under Rule 55(a).  In determining whether to grant a motion for default judgment, a court within this district considers three factors: '(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment.'" *Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, No. 15CV5553-LTS, 2016 U.S. Dist. LEXIS 71942, *6 (S.D.N.Y. June 2, 2016) (internal citations omitted).  Once the foregoing factors have been established, the court "must determine whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action".  *Id.*  "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).  Ultimately, the entry of a default judgment is entrusted to the sound discretion of the district court. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

Here, Defaulting Defendants have failed to appear, answer or otherwise respond to the Complaint or comply with the expedited discovery ordered in the TRO and PI Order, which indicates that Defaulting Defendants' conduct is willful. (Nastasi Aff., ¶¶ 19-21); *Indymac Bank,*

3

*F.S.B. v. N't'l Settlement Agency, Inc.* No. 07-cv-6865 (LTS) (GWG), 2007 U.S. Dist. LEXIS 93420, \*2 (S.D.N.Y. Dec. 19, 2007). Given that Defaulting Defendants have failed to appear, they have likewise failed to present any meritorious defenses (were Defaulting Defendants to have any, which they do not). *See id.* In addition, denying Plaintiffs' Motion for Default Judgment would be highly prejudicial to Plaintiffs since Plaintiffs would otherwise be left without any recourse. Moreover, Plaintiffs have adduced more than sufficient allegations, supported by evidence, to establish all of their claims in connection with Plaintiffs' Application, and as fully briefed in Plaintiffs' Application and as the Court already implicitly acknowledged, the Court has personal jurisdiction over Defendants. *See* TRO, PI Order.

Article 15 of the Hague Convention ("Article 15") sets forth certain service conditions that must be met in order to enter a judgment if a defendant has not appeared. Notably, among the multiple exceptions to the Article 15 service requirements that are provided therein, is the last provision of Article 15, which states "[n]otwithstanding the provisions of the preceding paragraphs, the judge may order, in the case of urgency, **any** provisional or protective measures." Article 15 (*emphasis added*). Accordingly, the plain text of Article 15 provides that in exigent circumstances, like those present here,[4] the judge is not required to order a plaintiff comply with the other provisions of Article 15, but rather, has broad authority to order alternative measures. Plaintiffs respectfully submit that the alternative service authorized by the TRO and PI Order herein falls under the last provision of Article 15. As articulated in Plaintiffs' Application and as several courts have ruled, the circumstances surrounding Plaintiffs' request for a temporary restraining order were urgent, and thus, Plaintiffs respectfully submit alternative service was

---

[4] *See,* Nastasi Dec. ¶¶ 10-13; *see also, Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919, at \*5 (N.D. Cal. June 23, 2020) ("delays to service via the Hague Convention may arise due to COVID-19 pandemic [thus] permitting renewal of alternative service motion.")

warranted under Fed. R. Civ. Pro. 4(f)(3)[5] and the urgency exception to Article 15. *See, e.g., Microsoft Corp. v. Goldah.Com Network Tech Co.*, 17-cv-02896-LHK, 2017 U.S. Dist. LEXIS 168537, *11-*12 (N.D. Cal. Oct. 11, 2017) (the situation described in Microsoft's motion for, *inter alia*, a temporary restraining order and electronic service of process was "urgent enough to warrant service under Rule 4(f)(3).")*; Lonati, S.P.A. v. Soxnet, Inc.*, CV 20-5539-GW-JPRx, 2021 U.S. Dist. LEXIS 258574 (C.D. Cal. Dec. 27, 2021) (finding alternative service through email and facsimile warranted under the urgency exception of Article 15 and plaintiffs met the requirements of Fed. R. Civ. Pro. 4(f)(3)); *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods. . . .' ") (quoting 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.))).[6]

Therefore, Plaintiffs respectfully submit that the Court should enter default judgment against Defaulting Defendants, and Plaintiffs' request for damages, as set forth herein, is reasonable and supported by evidence.

## B. DEFAULTING DEFENDANTS ACTED WILLFULLY

Since Defaulting Defendants failed to appear in this action, no further analysis is required into willfulness because, and axiomatically, infringement is deemed willful "[b]y virtue of the default[.]" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  Nevertheless, Plaintiffs respectfully submit that Defaulting Defendants unequivocally engaged in willful

---

[5] Plaintiffs will promptly provide supplemental briefing on this issue should the Court request it.
[6] Recently, in *Smart Study Co. v. Acuteye-Us, et al.*, 21-cv-5860 (GHW), 2022 U.S. Dist. LEXIS 129872 at *34-*39 (S.D.N.Y. July 21, 2022), despite initially granting plaintiff's request for alternative e-mail service on China-based defendants in a temporary restraining order and a preliminary injunction order, Judge Woods recently reconsidered his decision, finding service by email did not meet the requirements under Article 15 and thus the Court could not enter default judgment against the defaulting defendants.  Plaintiffs respectfully submit that Judge Woods appears to have overlooked the fact that a judge is not required to order a plaintiff to comply with the conditions of Article 15, but instead, has broad authority to order alternative measures in the case of urgency. *See*, Hague, Article 15.

counterfeiting and infringement of the CoComelon Marks and/or CoComelon Works for the reasons set forth below.

The standard for willfulness "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993). Such knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly. *See N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding that for "the purpose of awarding enhanced statutory damages," the knowledge component of willfulness "need not be proven directly but may be inferred from the defendant's conduct."). First, in the instant action, the Counterfeit Products contain marks and works that are identical to Plaintiffs' CoComelon Marks and/or CoComelon Works. *See* Complaint, Exs. B – D; *see also Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842, at *12-13 (S.D.N.Y. Sep. 2, 2011) ("Because the marks used by defendants on their products are virtually identical to the Coach Registered Trademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is intentional."); *Spin Master, Ltd. v. 158*, 463 F. Supp. 3d 348 (S.D.N.Y. 2020) (quoting *Michael Grecco Prods., Inc. v. Valuewalk, LLC,* 345 F. Supp. 3d 482, 502 (S.D.N.Y. 2018) ("[i]n comparing the works, the court 'could only reach one inescapable conclusion: the images are substantially similar because they are exact copies.'"). Second, the undisputed evidence demonstrates that none of the Counterfeit Products sold by Defendants were purchased from Plaintiffs. (Miller Dec., ¶ 23); *see also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (finding defendants to have acted willfully due in part to their failure to take any measures to verify the authenticity of the infringing product); *Gucci Am., Inc., v. Duty Free Apparel*, *Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004) ("'Selling products acquired outside the

customary chain of retail distribution and without the usual authenticating documentation' is a 'high risk business.'") (quoting *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 245 (3d Cir. 2003)) (internal quotation marks omitted).    Thus, the uncontradicted evidence demonstrates that Defendants unequivocally engaged in willful counterfeiting and infringing activities. (Complaint, Ex. D).

## C.  PLAINTIFFS HAVE ESTABLISHED DEFAULTING DEFENDANTS' LIABILITY

Where, as here, a defendant defaults, all well-pleaded factual allegations of the complaint, except those relating to damages, are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *See, e.g., City of New York v. Mickalis*, 645 F.3d at 137 ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well pleaded' factual allegations contained in the complaint.") (quoting *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).  That said, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *accord Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("[A district court] is also required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law[.]").

### 1.  Defaulting Defendants are Liable for Trademark Infringement and Counterfeiting

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of Plaintiffs' mark is likely to cause confusion.  *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

With respect to the first element, Plaintiffs have pleaded and demonstrated through a declaration from Moonbug's Chief Legal Officer that Plaintiffs are the owner of all rights, title and interest to the CoComelon Marks that the Defendants infringed (Miller Dec., ¶¶ 9-11, Ex. B); *see Faram 1957 S.p.A. v. Faram Holding & Furniture, Inc.,* No. 16-CV-2430 (VSB), 2018 U.S. Dist. LEXIS 44594, *25 (S.D.N.Y. Mar. 19, 2018) (noting that a certificate of registration serves as prima facie evidence that a registered mark is protectible, and evidence that a mark has been deemed incontestable serves as "conclusive evidence of exclusive ownership.").

With respect to the second element, "the standard for consumer confusion is easily satisfied in the case of counterfeits because counterfeits, by their very nature, cause confusion." *Off-White LLC v. 5HK5584*, No. 19-cv-672 (RA) (JLC), 2020 U.S. Dist. LEXIS 58926, at *14 (S.D.N.Y. Apr. 3, 2020) (quoting *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (internal quotation marks omitted). Here, Defendants have used the CoComelon Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the CoComelon Marks, on or in connection with Defendants' Merchant Storefronts and the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Counterfeit Products and therefore, there can be no question that Defendants' actions are likely to cause consumer confusion. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117 (S.D.N.Y. 2008) (finding sufficient facts were pleaded to demonstrate a likelihood of confusion when the defendant was using the plaintiff's marks, in the same stylized fashion on or in connection with goods). Thus, it is abundantly clear that there is a sufficient legal basis for Defaulting Defendants' liability for trademark infringement and counterfeiting.

### 2. Defaulting Defendants are Liable for Copyright Infringement

In order to prevail on a claim for copyright infringement, plaintiff must demonstrate (1) that it owns a valid copyright and (2) that Defendants infringed said copyright. *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, at *142 (E.D.N.Y. 2011) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). First, Plaintiffs have pleaded and further demonstrated through a declaration from Moonbug's Chief Legal Officer that Plaintiffs are the owners of all rights, title, and interest in the CoComelon Works that the Defaulting Defendants infringed (Miller Dec., ¶ 13), including the certificates of registration for the CoComelon Works, which are *prima facie* evidence of the validity of the copyrights and the facts stated in such registrations (*Id.*, Ex. C), and that Plaintiffs have never authorized Defaulting Defendants to use the CoComelon Works and/or sell Counterfeit Products (*Id.*, ¶ 23). *See Pearson*, 2021 U.S. Dist. at *8-9.

Second, Plaintiffs have also established that all Defaulting Defendants, with knowledge of Plaintiffs' rights in and to the CoComelon Works, infringed the same through their sale of Counterfeit Products. Defaulting Defendants have copied one or more of the CoComelon Works by reproducing and/or displaying substantially similar, if not identical, imitations of the CoComelon Works either embodied in the Counterfeit Products themselves and/or in connection with the offering for sale and/or sale of Counterfeit Products. (Complaint, Ex. D; Miller Dec., ¶¶ 21-22; and Nastasi Dec., ¶¶ 15-16, Ex. B). *See also Spin Master, Ltd.*, 463 F. Supp. 3d 348. The undisputed evidence demonstrates that Defaulting Defendants had actual notice of Plaintiffs' copyrights because Plaintiffs sell their world-famous CoComelon Products throughout the United States and the world. (Miller Dec., ¶¶ 3-7). Thus, the uncontradicted evidence demonstrates that Defaulting Defendants unequivocally engaged in willful infringing activities. (Complaint, Ex. D).

### D. PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

Plaintiffs respectfully request that the Court permanently enjoin Defaulting Defendants from any further counterfeiting and/or infringement of Plaintiffs' CoComelon Marks and CoComelon Works for the reasons detailed below, coupled with the Court's earlier findings on the same issues in its entrance of the TRO. By virtue of Defaulting Defendants' defaults, Plaintiffs' well-pled factual allegations set forth in the Complaint, except those relating to the amount of damages, are taken as true. *Trans World Airlines*, 449 F.2d 51 at 70; *see also Greyhound Exhibit group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) *cert. denied*, 113 S. Ct. 1049 (1993).

A district court has authority under the Lanham Act to grant injunctive relief to prevent further violations of Plaintiffs' trademarks. 15 U.S.C. § 1116.  Furthermore, a district court has the authority to grant a permanent injunction on a motion for default judgment.  *See*, *e.g.*, *Harris v. Fairweather*, 11-cv-2152 (PKC) (AJP), 2012 U.S. Dist. LEXIS 128409, at *38-40 (S.D.N.Y. Sep. 10, 2012) (holding that in a default situation, permanent injunctive relief was appropriate under the Lanham Act taking the complaint's allegations as true).  Here, since Defaulting Defendants' defaults constitute admissions of liability and Plaintiffs successfully established their claims for trademark infringement and counterfeiting, Plaintiffs respectfully submit that a permanent injunction against Defaulting Defendants should be entered.[7]

Moreover, the Copyright Act authorizes courts to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restraint infringement of a copyright."  17 U.S.C. § 502(a); *See*, *e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488,

---

[7] As detailed at length in the Application and omitted here for brevity, Plaintiffs demonstrated success on their uncontroverted claims for trademark counterfeiting and infringement against Defendants. *See* Application; *see also* TRO and PI Order.

(S.D.N.Y. 2018) (holding that in a default situation, permanent injunctive relief was appropriate under the Copyright Act, "enjoining Defendants from infringing any copyrighted work…owned or controlled by plaintiffs"); *Cisco Tech, Inc. v. Certification Trendz Ltd*., No. 15-cv-965 (VLB), 2015 U.S. Dist. LEXIS 83127, at \*3 (D. Conn. June 26, 2015).  Here, since Defaulting Defendants' defaults constitute admissions of liability and Plaintiffs successfully established their claims for copyright infringement, Plaintiffs respectfully submit that a permanent injunction against Defaulting Defendants should be entered.

Specifically, a permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C*., 547 U.S. 388, 391 (2006).  In intellectual property actions, permanent injunctions are normally granted when there is "a threat of continuing violations." *Steele v. Bell*, 11-cv-9343 (RA) (RLE), 2014 U.S. Dist. LEXIS 44976, at \*22 (S.D.N.Y. Mar. 3, 2014).  Here, as pleaded in the Complaint and supported by the uncontroverted evidence, Defendants infringed Plaintiffs' CoComelon Marks and/or CoComelon Works by, *inter alia*, willfully and knowingly advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products, thereby causing irreparable injury to Plaintiffs. (Complaint, Ex. D).  While AliExpress has removed Defendants' Infringing Listings from their Merchant Storefronts temporarily, there remains a serious possibility that Defendants will continue to infringe Plaintiffs' intellectual property rights should such restraints be lifted.  *Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) ("It is settled that an action for an injunction does not become moot

11

merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to '[their] old ways.'''') (citing *Gray v. Sanders*, 372 U.S. 368, 376 (1963)) (internal quotation marks omitted).

On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law, which amended the text of 15 U.S.C. § 1116(a) to codify a rebuttable presumption of irreparable harm.[8]  Plaintiffs respectfully submit that they are entitled to the presumption of irreparable harm.  Nonetheless, regardless, courts have issued permanent injunctions when intellectual property rights holders have shown a potential loss of goodwill and control over their trademark(s).  *See, e.g., United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) (granting request for permanent injunction, finding irreparable harm where likelihood of confusion as to source and likelihood of injury to reputation and goodwill were shown); *see also Really Good Stuff, LLC v. BAP Inv'rs, L.C.,* 813 Fed. App'x 39, 44 (2d Cir. 2020) ("[t]he loss of reputation and goodwill constitutes irreparable harm").  Here, not only have Plaintiffs suffered lost profits as a result of Defendants' competing, substandard Counterfeit Products, but Defendants' actions have caused unquantifiable irreparable harm to the goodwill and reputations associated with Plaintiffs, their

---

[8] The Act reads, in relevant part, as follows:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions…to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. *A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order*.

*See Vans, Inc., et al. v. Walmart, Inc., et al.*, 21-cv-01876 (KES) Dkt. 65, *23 (C.D. Cal. Mar. 31, 2022).

CoComelon Marks, CoComelon Works and CoComelon Products. (Miller Dec., ¶ 25). Further, because of Defaulting Defendants' failures to appear in this action, Plaintiffs were unable to obtain complete and accurate information regarding the actual profits derived from their sales of Counterfeit Products, making Plaintiffs' actual damages effectively impossible to measure. (Nastasi Aff., ¶¶ 19-23). *See*, *e.g., Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 at *10 (S.D.N.Y. May 9, 2011) (finding irreparable harm where "determining the amount of damages from [defendant's] infringing conduct [is] especially difficult, if not impossible").

Given such injury to Plaintiffs' goodwill and reputation, as well as the absence in the record of any assurance against Defaulting Defendants' continued violation of the CoComelon Marks and/or CoComelon Works, monetary damages alone are inadequate to compensate Plaintiffs for the damage they have incurred and will continue to incur if an injunction is not entered. A showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation" of a plaintiff's rights. *Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010). When a default judgment is entered, "[a] court may infer from a defendant's default that it is willing to or may continue its infringement." *Pearson Educ., Inc. v. Vegara,* No. 09-cv-6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597, at *12 (S.D.N.Y. Sept. 27, 2010) (internal citations omitted), adopted by, Order at Dkt. 21 (S.D.N.Y. May 11, 2011). As discussed above, Defaulting Defendants' failure to participate in this action emphasizes that they have no intention of ceasing their wrongful conduct, namely, their continued infringement and counterfeiting of the CoComelon Marks and/or CoComelon Works. Since Plaintiffs demonstrated a credible threat of future infringement and cannot be compensated properly with monetary relief alone, they respectfully submit that the requested injunction is necessary to fully redress the irreparable injury that they have suffered due to Defendants' illegal

and infringing actions. *Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011) ("Given the significant threat of future infringement, Plaintiff cannot be compensated with monetary relief alone.").

Further, the balance of hardships unquestionably and overwhelmingly favors Plaintiffs since they have suffered and will continue to suffer irreparable harm to their businesses, profits, goodwill and reputations as a result of Defaulting Defendants' willful and knowing use of the CoComelon Marks and/or CoComelon Works, and/or marks and/or artwork that are confusingly and/or substantially similar thereto, and their sales of Counterfeit Products. (Miller Dec., ¶ 25). Additionally, the public interest is clearly served by a permanent injunction, as "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (granting motion to enjoin defendant from further trademark violations); *see also Montblanc*, 692 F. Supp. 2d at 259. Here, the public has an interest in being able to rely on the high quality of the CoComelon Marks, CoComelon Works and CoComelon Products. (Miller Dec., ¶ 15).

### E.  PLAINIFFS ARE ENTITLED TO HEIGHTENED STATUTORY DAMAGES

Both the Lanham Act and Copyright Act allow a plaintiff to elect either statutory damages or actual damages for willful infringement. *See* 15 U.S.C. § 1117(c); 17 U.S.C. § 504(c). The Lanham Act provides that, at any time before final judgment is rendered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, for the use of a counterfeit mark in connection with goods or services in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or (2) if the use of the counterfeit mark is found to be

14

willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).

Under the Copyright Act, an infringer is liable for: (1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages. 17 U.S.C. § 504(a). Section 504(c) of the Copyright Act permits a court to award statutory damages "with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." *Id*. § 504(c)(1). Where a court finds willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00." 17 U.S.C. § 504(c)(2).

Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a counterfeiter's profits is almost impossible to ascertain since "records are frequently nonexistent, inadequate, or deceptively kept." *Gucci Am., Inc*., 315 F Supp. 2d at 520. S*ee also Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005, at *41 (S.D.N.Y. June 7, 2014) ("Section 1117(c) of the Lanham Act was created to give victims of trademark infringement and unfair competition an avenue for recovering damages when a defendant hides, alters, or destroys business records."). Given Defendants' propensities to conceal their identities, disappear and destroy or hide any evidence or records of their counterfeiting and infringing actions, and that to date, Defaulting Defendants have appeared, answered or otherwise responded to the Complaint, Plaintiffs cannot ascertain Defaulting Defendants' actual profits. (Nastasi Dec., ¶¶ 10-13; Nastasi Aff., ¶¶ 19-23). Simply put, this case presents the exact circumstances that Congress envisioned in its enactment of Section 1117(c).

In making a determination of appropriate statutory damages awards, courts consider the following factors under Section 504(c) of the Copyright Act, which have also been used as guidance for determining an appropriate statutory damages award under Section 1117(c) of the

Lanham Act: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright [or trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Gucci Am., Inc.*, 315 F. Supp. 2d at 520 (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)) (internal quotation marks omitted); *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("In the absence of any guidelines for determining the appropriate award in a case involving willful trademark violations, courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement.").

With respect to the first, second and sixth factors, Defendants' propensities to secrete evidence pertaining to sales and profits – along with their failure to appear, answer or otherwise respond to the Complaint or comply with the expedited discovery ordered in the TRO – have made it impossible to determine Defendants' profits, quantify any expenses that Defendants may have saved by infringing Plaintiffs' CoComelon Marks and/or CoComelon Works or assess any revenues lost by Plaintiffs as a result of Defendants' infringing and counterfeiting activities. (Nastasi Dec., ¶¶ 10-13; Nastasi Aff., ¶¶ 19-23). Thus, these three factors support a higher statutory damage award for Plaintiffs. *See, AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150, at *7 (S.D.N.Y. Aug. 2, 2016) ("[C]ourts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range," like Defendants' User Accounts and Merchant Storefronts in this Action).

16

The third factor – the value of Plaintiffs' CoComelon Marks and CoComelon Works– also weighs in favor of increased statutory damages awards for Plaintiffs against Defaulting Defendants.   Here, Plaintiffs established that the CoComelon Products achieved worldwide recognition and success as a result of Plaintiffs' efforts in building up and developing consumer recognition, awareness and goodwill in its CoComelon Products, CoComelon Marks and CoComelon Works. (Miller Dec., ¶ 17).  By virtue of the foregoing, Plaintiffs amassed enormous value in the CoComelon Marks, and the CoComelon Marks identify Plaintiffs as the exclusive source of the CoComelon Products to which the CoComelon Marks are applied.  Therefore, the remaining factors also support significant statutory damages awards against Defaulting Defendants.  Particularly where, like here, Defaulting Defendants acted willfully, "a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Louis Vuitton Malletier*, 648 F. Supp. 2d at 504.

Plaintiffs seek statutory damages awards against each Defaulting Defendant.[9]  As discussed *supra*, since Defaulting Defendants have defaulted, and therefore have not provided any evidence of their purchases or sales of Counterfeit Products, the amount of Defaulting Defendants' profits is unknown. (Nastasi Aff., ¶¶ 19-23). Therefore, Plaintiffs are deprived of the ability to prove a specific amount of actual damages and instead have been left with no choice but to seek an award of statutory damages under the Lanham Act and/or Copyright Act. Plaintiffs' respectful request for statutory damages are based upon each Defaulting Defendants' wrongful use(s) of the CoComelon Marks and/or CoComelon Works in the undisputed evidence. (Nastasi Aff., ¶¶ 19-

---

[9] Plaintiffs respectfully submits that they are entitled to post-judgment interest calculated pursuant to the statutory rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).

13, Ex. E).[10]  Here, Plaintiffs confirmed that each and every Defaulting Defendants used one or more of the CoComelon Marks and/or CoComelon Works on or in connection with the sale of Counterfeit Products, and respectfully request an award of $75,000.00 against each Defaulting Defendant, plus post judgment interest calculated pursuant to the statutory rate.[11] *Id*.

Generally, "[t]he lack of information about any of the defendants' sales and profits, and the suspect nature of any information that was provided, make statutory damages particularly appropriate for this case." *Nike, Inc. v. Top Brand Co*., 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543, at *6 (S.D.N.Y. Feb. 27, 2006).  Specifically, Plaintiffs respectfully submit that their request for statutory damages is appropriate.  Furthermore, Plaintiffs confirmed that many Defaulting Defendants wrongfully used the CoComelon Marks, and all of the Defaulting Defendants wrongfully used the CoComelon Works. (Nastasi Aff., Ex. E). Since "the amount of defendants' likely profits from their infringement, the possibility of deterrence, and the need for redress of wrongful conduct are appropriate factors to consider," Plaintiffs respectfully submit that Defaulting Defendants' willful violations of the Lanham Act make their requests for damages appropriate. *Nike, Inc*., 2006 U.S. Dist. LEXIS 76543 at *6-7; *see also, Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010-1011 (2d Cir. 1995).    "Moreover, this Court has 'wide discretion' in

---

[10] Plaintiffs respectfully submit that Fed. R. Evid. 1006 authorizes the use of a summary sheet such as Exhibit E to the Futterman Aff. to establish damages in civil actions such as this action. *See also*, Complaint, Ex. D.

[11] While the Second Circuit has not yet addressed the issue of whether an award of statutory damages under both the Lanham Act and the Copyright Act amounts to duplicative damages, Hon. Katherine B. Forrest granted the plaintiff's request for $50,000 total per each defendant in statutory damages "[b]ecause plaintiff's statutory damages request of $50,000 total per defendant for willful infringement of each mark is significantly lower than the maximum award this Court is empowered to impose under either statute, and because it would serve both the compensatory and punitive purposes of the Lanham and Copyright Acts' prohibitions on willful infringement, the Court finds such an award to be reasonable." O*ntel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.*, No. 17-cv-871-KBF, Dkt. 40 (S.D.N.Y. Feb. 6, 2017). Here, each and every Defaulting Defendant infringed at least one (1) of Plaintiffs' CoComelon Marks and/or CoComelon Works, and a majority of the Defaulting Defendants infringed both the CoComelon Marks and the CoComelon Works; for those Defaulting Defendants who infringed both Plaintiff's CoComelon Marks and CoComelon Works, Plaintiffs' request for $75,000.00 in damages is significantly lower than the maximum award for willful infringement under both acts.

'setting the amount of statutory damages.'" *Ontel Prods. Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.*, 17-cv-871 (KBF), 2017 Dist. LEXIS 221489, at *3 (S.D.N.Y. June 29, 2017) citing *Fitzgerald Publ'g Co., Inc.*, 807 F.2d at 1116.

In this district, even where there was no concrete information about the defendants' actual sales figures and profits, Courts have not hesitated to award higher statutory damages in favor of plaintiffs. *See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S. Dist. LEXIS 82201, at *10–*11(S.D.N.Y. Nov. 7, 2007) (awarding plaintiff $250,000.00 per mark for two marks where defendant's conduct was willful and defendant's default "left the Court with no information as to any of the factors relating to the defendants' circumstances," and noting that "Courts have awarded similar damages in other cases in which there was little information as to the defendants' infringement"); *Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054, at *8 (S.D.N.Y. Apr. 26, 2005) (awarding $250,000.00 and noting that the amount "is consistent with (indeed, lower than) awards in similar cases," and citing cases); *see also All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011) (collecting cases awarding between $25,000.00 and $250,000.00 per mark). Awards of $1,000,000.00 and higher have been granted to plaintiffs in similar matters before this Court. *See, e.g., Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (S.D.N.Y. 2002) (awarding $1,000,000 in statutory damages for defendant's infringement of six Louis Vuitton marks, where the record contained no evidence of defendants' sales, nor the number of hits the website received); *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054, at *8-9 (S.D.N.Y. June 5, 2002) (where the Defendant sold 10,000 counterfeit watches, the Court found $1,000,000 in statutory damages to be appropriate and sufficient); *see also*, *Elsevier, Inc. v. Does 1-10*, No. 14-cv-2422 (GHW), slip op. at 3

19

(S.D.N.Y. Apr. 13, 2015) (ECF No. 58) (awarding plaintiff maximum statutory damages in the amount of $37,500,000 for willful copyright infringement); *True Religion Apparel, Inc. v. Xiaokang Lei, et al.*, No. 11-cv-8242 (HB), slip op. at 11, No. 17-cv-5553 (LGS) (GWG) (S.D.N.Y. Mar. 12, 2012) (awarding plaintiffs maximum statutory damages for willful copyright infringement).

Further, Plaintiffs respectfully submit that the statutory damages requested are the minimum recoverable damages in this case.  While Plaintiffs could have requested the statutory maximum of $2,000,000.00 per counterfeit mark and/or $150,000.00 per infringing work, they instead respectfully ask that the Court award them the reasonable amount of $75,000.00 against each Defaulting Defendant, which is within the range of awards granted by courts in this district in similar circumstances.[12]

## F. PLAINTIFFS ARE ENTITLED TO SERVE RESTRAINING NOTICES PURSUANT TO CPLR § 5222 AND TO AN ASSET TURNOVER PURSUANT TO CPLR § 5225

Plaintiffs respectfully request that the Court allow Plaintiffs to serve a restraining notice pursuant to CPLR § 5222 as instructed by this Court in cases including *Allstar Marketing Group, LLC v. 158*, No. 19-cv-4101 (GHW), 2019 U.S. Dist. LEXIS 141913 (S.D.N.Y. Aug. 20, 2019) and *WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y.

---

[12] *See*, *e.g., Nike, Inc. v. Wu,* 349 F. Supp. 3d 310 (S.D.N.Y. 2018); *Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647, at *10-11 (S.D.N.Y. Sep. 22, 2015); *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831, at *15 (S.D.N.Y. Jan. 20, 2010); *see also Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 427-428  (S.D.N.Y. 2018); *Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF, Dkt. 59 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. Aaron's Fashion Store, et al.*, No. 18-cv-10437-KPF, Dkt. 79 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF, Dkt. 62 (S.D.N.Y. Mar. 27, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.,* No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.,* No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018).

Mar. 27, 2019).[13]  Recently, in *Off-White LLC v. 2017pingan, et al.*, and two related actions,[14] after requesting supplemental briefing on the issue, Judge Failla allowed the plaintiff to serve restraining notices on third-party service provider PayPal pursuant to C.P.L.R. § 5222. 20-cv-5191 (KPF), Dkt. 40 (S.D.N.Y. May 7, 2021).[15]

Plaintiffs' requested post-judgment relief can be granted through N.Y. C.P.L.R. § 5222, as incorporated by Fed. R. Civ. P. 69.[16]  Pursuant to Rule 69(a), "post-judgment efforts to execute on a money judgment [must] comply with the procedural law of the forum state — unless a federal statute dictates to the contrary. The Lanham Act contains no such instruction. Accordingly, the applicable statute is N.Y. C.P.L.R. § 5225. *Tiffany (NJ) LLC v. Dong*, 2013 U.S. Dist. LEXIS 114986, at *28 (S.D.N.Y. Aug. 9, 2013).

> Where property is in possession of a judgment debtor, Section 5225 permits a court,[u]pon motion of the judgment creditor, upon notice to the judgment debtor, [and] where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, ... [to] order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist. LEXIS 125068, at *7-8 (S.D.N.Y. Aug. 8, 2017); N.Y. C.P.L.R. § 5225(a).

---

[13] *See*, *Dawson v. Krolikowski*, 530 N.Y.S.2d 931, 935 (Sup. Ct. 1988) ("[O]nce a money judgment is entered, restraining notices may be served pursuant to CPLR 5222 in order to prevent the transfer of property." (quotation marks omitted)).

[14] The related actions are *Off-White LLC v. 24 Hours Delivery Store et al*, 20-cv-5194 (KPF) and *Off-White LLC v. A9660, et al.*, 20-cv-5196 (KPF).  For ease of reference, Plaintiffs will refer to the first filed case (20-cv-5191) only, however, Judge Failla issued the same decision for all three related cases.

[15] Judge Failla reserved decision on the plaintiff's request for a post-judgment asset turnover until after the restraining notices were served.  *Id.*

[16] *See e.g. Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449, at *2 n.1 (E.D.N.Y. July 5, 2007).

Pursuant to N.Y. C.P.L.R. §§ 5201-5253, once a defendant is found liable and a money judgment is rendered against a defendant, a New York District Court has the power to restrain the defendant's assets. *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 264 (2d Cir. 2013); *see also Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920, at *1 (S.D.N.Y. Mar. 13, 1995) (ordering restraint pursuant to C.P.L.R. § 5222, finding that "[a] New York judgment creditor is entitled to a restraining notice on the debtor as a matter of right"). Further, the Second Circuit has affirmed the district court's authority to order a post-judgment injunction on a claim for money damages where the judgment debtor sought to evade payment to the judgment creditor. *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996).

Accordingly, C.P.L.R. § 5222, which permits issuance of a restraining notice against the judgment debtor that, with certain exceptions not relevant here, prohibits disposition or transfer of property "until the judgment … is satisfied," allows the post-judgment asset restraint requested by Plaintiff. *See* C.P.L.R. § 5222(b). And where property is not in the possession of a judgment debtor, Section 5225 authorizes a court to compel a nonparty to surrender a judgment debtor's property:

> [u]pon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee . . . .

N.Y. C.P.L.R. § 5225.

Although the state rule suggests that a special proceeding must be commenced, the Federal Rules of Civil Procedure make no mention of special proceedings. Federal courts in New York have deemed the CPLR special proceeding requirement satisfied when a plaintiff proceeds by complaint or motion against the third party holding a judgment debtor's assets. *See id.*; *see also,*

22

*e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (citing *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under [Rule] 69(a), rather than instituting a special proceeding under the New York State law.")) (additional citation omitted); *CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S. Dist. LEXIS 23014, at *3 (E.D.N.Y. Feb. 25, 2016) (noting that the argument that a turnover order must be brought by plenary action "is easily disregarded"); *S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063, at *2 (S.D.N.Y. Oct. 6, 2010).

Section 5201 describes the assets that are subject to enforcement under New York law, and are therefore available to judgment creditors' seeking to collect under § 5225. *Arrowhead Capital Fin., Ltd.*, 2017 U.S. Dist. LEXIS 125068, at *8-9; *see also* N.Y. C.P.L.R. § 5201.  According to this provision, "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment." *Id.* at 8*; see also* C.P.L.R. § 5201(b). Such property need not be located in New York; "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property" if the defendant "is a judgment debtor or a garnishee." *Id.* at 8 (citing *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009)).  Finally, no third parties have raised any issue regarding Plaintiffs' requests either in this case or when previously ordered by judges in this district in similar cases.[17] In the event this Court grants Plaintiffs' motion, and after the Court enters its final judgment,

---

[17] *See, e.g., Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG, Dkt. 85 (S.D.N.Y. Jan. 17, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.,* No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.,* No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018); *Wow Virtual Reality, Inc. v. BIENBEST, et al.,* No. 18-cv-3305-VEC, Dkts. 210-289, 302 (S.D.N.Y. Dec. 5, 2018); *Moose Toys Pty Ltd., et al. v. 963, et al.,* No. 18-cv-2187-VEC, Dkts. 160-251, 257 (S.D.N.Y. Nov. 30, 2018).

Plaintiffs will promptly serve restraining notices, pursuant to CPLR § 5222, on Defaulting

Defendants,[18] Third Party Service Providers and Financial Institutions, and upon restraint, would

move for an asset turnover pursuant to CPLR § 5225.[19]

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'

Motion for Default Judgment and a Permanent Injunction in its entirety.

Dated: May 26, 2023                     Respectfully submitted,

                                        EPSTEIN DRANGEL LLP

                                        BY:    /s/ Gabriela N. Nastasi
                                               Gabriela N. Nastasi
                                               gnastasi@ipcounselors.com
                                               Jason M. Drangel (JD 7204)
                                               jdrangel@ipcounselors.com
                                               Ashly E. Sands (AS 7715)
                                               asands@ipcounselors.com
                                               Danielle S. Futterman (DY 4228)
                                               dfutterman@ipcounselors.com
                                               EPSTEIN DRANGEL LLP
                                               60 East 42nd Street, Suite 1250
                                               New York, NY 10165
                                               Telephone:    (212) 292-5390
                                               Facsimile:    (212) 292-5391
                                               *Attorneys for Plaintiffs*
                                               *Moonbug Entertainment Limited and*

---

[18] Pursuant to Fed. R. Civ. P. 62(a) "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 30 days have passed after its entry, unless the court orders otherwise." Accordingly, Plaintiffs request that the automatic 30-day stay be dissolved to prevent Defaulting Defendants from potentially hiding their assets during this time. *See Allstar*, 2019 U.S. Dist. LEXIS 141913 at *11 FN 6 ("if a plaintiff is concerned that defendants might attempt to conceal assets during the pendency of the automatic stay, it should include a dissolution of that stay as part of the relief requested in its proposed judgment.").

[19] CPLR § 5225 "authorizes the commencement of a special proceeding or motion practice against the person in possession of that property that may ultimately result in the transfer of the property after finding personal jurisdiction over the garnishee and a hearing." *Id.* Although the state rule suggests that a special proceeding must be commenced, the Federal Rules of Civil Procedure make no mention of special proceedings, and Federal courts in New York have deemed the special proceeding requirement satisfied when a plaintiff proceeds by complaint or motion against the third party holding a judgment debtor's assets. *See id.*; *see also, e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012).

*Treasure Studio Inc.*

25